**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

**STERNS & WEINROTH**
A Professional Corporation
Douglas J. McDonough (DM-0973)
50 West State Street, Suite 1400
P. O. Box 1298
Trenton, New Jersey 08607-1298
(609) 392-2100
Counsel to the Chapter 7 Trustee, Andrea Dobin, Plaintiff

| | |
|---|---|
| In re: | Case No. 07-17914 (RTL) |
| RACHEL PRENDEVILLE, | Chapter 7 |
| Debtors. | |
| ANDREA DOBIN, CHAPTER 7 TRUSTEE | Adv. Pro. No. 08-1232 (RTL) |
| Plaintiff, | **Hearing Date: April 27, 2009** |
| v. | |
| JASON PRENDEVILLE, | **Oral Argument Waived** |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON COUNTS ONE, TWO and THREE OF
THE TRUSTEE'S COMPLAINT**

Of Counsel:
  Andrea Dobin
On the Brief:
  Douglas J. McDonough

{00155245;v1}0

**Statement of Facts**

In December 2004, Rachel Prendeville (the "Debtor") and her spouse, Jason Prendeville (the "Defendant") purchased real property at 401 Constitution Drive, Forked River, New Jersey (the "Property"). (Certification of Andrea Dobin ("Dobin Cert."), ¶6.) Fifteen months later, in February 2006, the Debtor transferred her interest in the Property to the Defendant for $1.00 (the "Transfer"). (Dobin Cert., ¶7.)

At around the same time as the Transfer, in late 2005, a daycare facility the Debtor owned began suffering from financial difficulties. (Dobin Cert., ¶11.) By May of 2006 the Debtor's daycare facility was ordered closed by the State of New Jersey. (Dobin Cert., ¶11.)

While the Defendant stated that the Transfer was done in anticipation of divorce proceedings, the Defendant and the Debtor never divorced. Rather the Debtor and Defendant remain married and currently reside at the Property together. (Dobin Cert., ¶13.)

The Transfer occurred simultaneously with the onset of the Debtor's financial difficulties. Debtor's interest in the Property appears to have been the only valuable asset owned by the Debtor, either at that time or since then. (See; Schedules A and B of the Debtor's Petition as well as the Debtor's Statement of Financial Affairs, particularly Statement 10 demonstrate this fact.[1])

Immediately prior to the Transfer, in January 2006, the Property was appraised at $350,000.00. (Dobin Cert., ¶10.) At the time of the Transfer there was only one mortgage on the property with an outstanding balance of, at most, $192,000.00. There were no other liens on the Property. (Dobin Cert., ¶9 and Exhibits C & D.)

---

[1] It is respectfully requested that the Court take judicial notice of the facts contained in the Debtor's Bankruptcy Petition, the Schedules and the Statement of Financial Affairs, as the same were filed under penalty of perjury and the facts contained therein are self proving.

Debtor's financial difficulties continued after the Transfer. She filed a voluntary Chapter 7 petition on June 6, 2007. (Dobin Cert., ¶3.)

On March 12, 2008, the Trustee filed a complaint against the Defendant (the "Complaint") seeking to avoid the Transfer of the Property and return the Property to the joint ownership of the Debtor and the Defendant ("Count One" and "Count Two"). (Dobin Cert., ¶5.) Secondarily, and contingent upon entry of judgment on Count One or Count Two, the Trustee seeks authority under 11 U.S.C. § 363(h) to sell the non-debtor Defendant's interest in the Property together with that of his wife's and compensate the Defendant accordingly from the proceeds ("Count Three"). (Dobin Cert., ¶5.) The Trustee is entitled to summary judgment on Count One, Count Two and Count Three of the Complaint because there exists no material issue of fact with regard to the Transfer of the Property itself or the Trustee's entitlement to the relief she seeks.

## Legal Standard

Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Rule 7056(c) of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is appropriate where "there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Rosen v. Bezner, 996 F.2d 1527, 1530 (3d Cir. 1993). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327. The goal of

summary judgment is to promptly dispose of any action in which there is no genuine issue of material fact and thus avoid a trial that will cause unnecessary delay and expense. In re Pineview Care Center, Inc., 142 B.R. 667, 685 (Bankr. D.N.J. 1992).

**Legal Argument**

**I. The Trustee is entitled to Summary Judgment on Count One and Count Two of the Complaint, pursuant to 11 U.S.C. § 548 and the New Jersey Fraudulent Transfer Act.**

11 U.S.C. § 548 reads, in pertinent part, "The trustee may avoid any transfer… of an interest of the debtor in property… that was made on or within 2 years before the date of the filing of the petition." In order to avoid a transfer, it must be shown that the debtor voluntarily or involuntarily-

(A) Made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was indebted or became indebted.

or

(B) The Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation and the Debtor was insolvent at the time of the Transfer or became insolvent because of the transfer.

See 11 U.S.C. § 548(a)(1)(A) and (B).

Likewise, the New Jersey Fraudulent Transfer Act, N.J.S.A. § 25:2-25 (the "NJFTA") provides, in relevant part, that a transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer, and the debtor intended to incur, or

believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. N.J.S.A. § 25:2-25. The NJFTA further provides that an action brought under N.J.S.A. § 25:2-25 must be brought within four years after the transfer was made. N.J.S.A. § 25:2-31a.

The Bankruptcy Code provides the vehicle for which the Trustee may recover the Debtor's interest in fraudulently conveyed assets under the NJFTA. Under Section 544(b)(1) of the Code, the Trustee stands in the shoes of an unsecured creditor and can void a fraudulent transfer for the benefit of all creditors pursuant to the NJFTA. 11 U.S.C. § 544(b)(1). See In re McLaughlin, 2006 WL 3796421, Slip Op. (D.N.J.) Dec. 6, 2006 at *4.

    **A.**    **The Debtor acted with actual intent to defraud her creditors.**

Because actual fraud is rarely proven by direct evidence, as individuals are rarely willing to admit such intent, courts infer actual intent by examining the circumstances and considering whether various "badges of fraud" are present. Dobin v. Hill, 342 B.R. 183, 198 (Bkrtcy.D.N.J. 2006) *citing* In re G-I Holdings, Inc., 313 B.R. 612, 640-41 (Bankr.D.N.J. 2004), *citing* Gilchinsky v. Nat'l Westminster Bank, 159 N.J. 463, 477, 732 A.2d 482 (1999). See also; In re Victor International, Inc., 278 B.R. 67 (Bankr.D.N.J. 2002) *subsequently affirmed* 97 Fed.Appx. 365, 369 (3rd Cir. 2004). New Jersey's adoption of the Uniform Fraudulent Transfer Act ("UFTA") provides the Court with a non-exclusive list of factors that should be considered in determining actual intent under state law. N.J.S.A § 25:2-26. This list is often referred to as the "badges of fraud". The badges of fraud "'represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent.'" In re G-I Holdings, Inc., 313 B.R. at 641, *quoting* Gilchinsky, 159 N.J. at 476, 732 A.2d 482.

Courts consider the existence of the following badges of fraud in establishing actual intent: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was disclosed or concealed; (4) before the transfer was made, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or become insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. N.J.S.A. § 25:2-26 (1997). See also; Moody v. Sec. Pacific Bus. Credit, Inc., 971 F.2d 1056, 1064 (3rd Cir. 1992) *affirming* 127 B.R. 958, 991 (W.D. Pa. 1991).

The presence or absence of one of the above factors is not necessarily conclusive. Hill, 342 B.R. at 198. The New Jersey Supreme Court explained in Gilchinsky, "the proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single badge of fraud may cast suspicion on the transferor's intent, the confluence of several badges of fraud in one transaction generally provides conclusive evidence of an actual intent to defraud." Gilchinsky, 159 N.J. at 477, 732 A.2d 482; *see also* In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994), *citing* Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir. 1991) ("The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud"). In Hill, the Court held that the establishment of five of the badges of fraud by the

requisite preponderance of the evidence provided conclusive evidence of the defendant's intent in that case. Hill, 342 B.R. at 199.

The Court must grant summary judgment on Count One and Count Two of the Complaint because at least five badges of fraud are present and cannot be disputed given the documents provided and the Defendant's and the Debtor's testimony.

Badge One

The Debtor and the Defendant transferred the Property to the name of the Defendant alone while the two were still married, which demonstrates an insider transaction. (Dobin Cert., ¶13.) Where the debtor is an individual as here, an "insider" is defined as a relative of the debtor. N.J.S.A. § 25:2-22(a)(1). Further, a transfer of property to a relative is subject to close scrutiny in a fraudulent conveyance action, and the relationship of the parties in conjunction with other circumstances, including the consideration exchanged in the challenged transfer and whether the exchange was made in good faith, will often prove fraud, notwithstanding the absence of direct evidence of fraud. In re Halpert & Co., 254 B.R. 104 (Bankr.D.N.J. 1999). Since this transfer was to an insider, the first badge of fraud is present.

Badge Two

Following the Transfer, the Debtor and the Defendant continued to live together at the Property. The Defendant testified that they still reside at the Property. (Dobin Cert., ¶13.) The Debtor's retaining possession or control of the property transferred after the transfer is the second badge of fraud present in this case.

Badge Three

At the time of the Transfer, the equity in the house was the only valuable asset the Debtor had. According to the Debtor's Statement of Financial Affairs, since that time she has not transferred any other assets. Further, Schedules B & C filed by the Debtor show she currently has no non-exempt assets. The Debtor's Bankruptcy petition shows that the Debtor neither currently has nor previously had any assets apart from the equity in her home. The Transfer was of substantially all of the Debtor's assets, which is the third badge of fraud in this case.

Badge Four

The appraisal completed in January 2006 indicates that the Property was worth approximately $350,000 at that time. (Dobin Cert., ¶8.) The Debtor's interest was no less then $79,000.00. (Dobin Cert., ¶10.) The Debtor received no compensation in connection with the Transfer, as is demonstrated by the Deed. (Dobin Cert., ¶7.) Thus, the fourth badge of fraud present here is that the value of the consideration received by the Debtor was not reasonably equivalent to the value of the asset transferred.

Badge Five

The Debtor testified that she began having financial problems in late 2005. Debtor executed the Deed transferring her interest to the Defendant for no consideration in February 2006. (Dobin Cert., ¶7 & 11.) Debtor testified that she transferred the Property to her husband because she did not have the finances to take care of the home. (Dobin Cert., ¶12.) At the time of the Transfer the Debtor was unable to pay her personal and business debts as they became due. According to the Debtor's Statement of Financial Affairs: the Debtor's car was repossessed in 2006; Chase Bank filed a collection suit against the Debtor in 2006, as did Discover Card

Services; and GE Money Bank commenced a collection action against the Debtor in 2007. Debtor testified that in May 2006 she was forced to close the daycare facility she ran. (Dobin Cert., ¶11) The evidence shows the Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer. At the time of the Transfer, or shortly thereafter, the Debtor was unable to pay her bills as they became due. That is the fifth badge of fraud.

As the above shows, there are at least five badges of fraud present in this case. The Transfer occurred to avoid exposure of the Debtor's equity to the Debtor's personal and business creditors. These creditors were mounting as early as the end of 2005. There are no material issues of fact with regard to the Transfer, and the Trustee is entitled to judgment as a matter of law.

  **B.**  **The Trustee has established constructive fraud on the part of the Debtor.**

Assuming, *arguendo*, that the Court is not prepared at this stage to find the absence of a genuine issue of material fact related to *actual* fraud by the Debtor, the Trustee is still entitled to summary judgment under the Bankruptcy Code and the NJFTA under a theory of constructive fraud. As an alternative to the "actual intent" prong of the NJFTA and of 11 U.S.C. § 548(a)(1)(A), the statutes provides that a transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur [ ] debts beyond the debtor's ability to pay as they became due. See; 11 U.S.C. § 548(a)(1)(B)(ii)(I) and (III) and N.J.S.A. § 25:2-25b(2).

As set forth above, the Debtor transferred her interest in the Property to her husband for $1.00 when the value of her interest in the Property was shown to be $79,000.00.[2] This demonstrates that the transfer occurred for less than reasonably equivalent value. Neither the Debtor nor the Defendant's testimony presented any other form of consideration that would be acceptable under the Bankruptcy Code or the NJFTA. Furthermore, it is clear from the Debtor's testimony that her financial problems with her business began in late 2005 and the Transfer occurred in the first quarter of 2006. Thus, at the time of the Transfer, the Debtor knew or reasonably should have known that she would incur debts beyond her ability to pay when they became due.

The Debtor's and Defendant's fraud is apparent from the documents and the testimony that they presented. No genuine issue of material fact exists with regard to the elements of the Bankruptcy Code or the NJFTA. Thus, the Trustee is entitled to judgment as a matter of law on Count One and Count Two of the Complaint.

> **II. The Trustee is Entitled to Summary Judgment on Count Three of the Complaint, pursuant to § 363(h) of the Code because the Trustee has demonstrated all of the four elements required under the Code.**

Section 363(h) of the Bankruptcy Code authorizes a trustee, under certain circumstances, to sell the co-owner's as well as the debtor's interest in jointly owned property. Assuming that the Trustee succeeds in her avoidance of the Transfer, the Property would be returned to the joint ownership of the Debtor and the Defendant. In Count Three of the Trustee's Complaint, the Trustee seeks authority under § 363(h) to sell the Defendant's interest in the Property together

---

[2] The Property appraised at $350,000.00 a month before the Transfer and there was a mortgage on the property of no more then $192,000.00 at the time of the Transfer. That left $158,000.00 in equity in the Property, the Debtor's half of which was $79,000.00.

with that of the Debtor's. Section 363(h) provides that a trustee may sell the non-debtor's undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

> (1) partition in kind of such property among the estate and such co-ownership is impracticable; (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than the sale of such property free of the interests of co-ownership; (3) the benefit to the estate of a sale of such property outweighs the detriment, if any, to such co-owners; and (4) such property is not used in the production, transmission, or distribution, for sale of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

A trustee must establish each of the four elements in order to sell the property under § 363(h). In re Bell, 80 B.R. 104 (E.D. Tenn. 1987); Spear v. Crow Office Park Partners (In re Haley), 100 B.R. 13 (Bankr. E.D. Cal. 1989).

Summary judgment must be granted to the Trustee on Count Three of the Complaint because the Trustee can demonstrate the presence of the four elements required and no genuine issue of material fact exists with regard to these elements. The Property is a single family home, as such partition of the Property is impracticable (Element 1) and the Property is not used for the production, transmission, distribution or sale of electric energy or natural gas for heat, light or power (Element 4).

It is clear under the present facts that sale of the Defendant's property, once returned to the proper ownership and sold will create a significant benefit to the Debtor's Estate and its creditors (Element 2). The Property was appraised two years ago for $350,000. (Dobin Cert., ¶8.) The existing mortgage on the property is no more then $222,000, (Dobin Cert., ¶14) yielding

conservative equity in an amount of approximately $128,000.  The Estate is entitled to 50% of that amount. This benefit outweighs any detriment to the Defendant in having the property sold.

A balancing of the benefit to the Estate and the detriment to the co-owner under § 363(h)(3) is fact sensitive. COLLIERS ON BANKRUPTCY, ¶363.08[3] at 363-63.  In its analysis, a court must weigh the benefit to the estate from the sale of the property against any detriment, economic and non-economic, to the non-debtor arising from the sale of jointly owned property. In re Oswald, 90 B.R. 218 (Bankr. N.D. W.Va. 1988); In re Harris, 155 B.R. 948, 950 (Bankr. E.D.Va. 1993). Any economic hardship on the Defendant is mitigated by the provisions of Sections 363(i) and (j). Although non-economic, emotional and psychological factors may play a role in the court's decision, those factors alone will not control the outcome, absent other compelling circumstances.

Under the analysis in In re Roswick, purely emotional factors are not, without more, sufficient to defeat a trustee's motion to sell property of the Debtor's bankruptcy estate. In re Roswick, 231 B.R. 843 (Bankr. S.D.N.Y. 1999). The Roswick court held that the co-owner "must demonstrate some extraordinary circumstance, other than inconvenience or emotional attachment, to frustrate the trustee's attempt to sell the property." Id. at 861. The defendant in Roswick claimed hardship in the sale of an upscale apartment because, among other reasons, she raised her family there, its sale would leave her "ill and devastated" and she was unlikely to find another apartment in the same affluent area. Id. at 861-63.

The Defendant has not asserted any damages that would result to him, emotional, financial or otherwise, from the sale of the Property and his receipt of 50% of the net proceeds

from that sale. Therefore any benefit to the Estate outweighs the non-existent detriment to the Defendant (Element 3).

The Trustee has established all four of the elements of § 363(h). The Defendant cannot demonstrate a detriment sufficient to outweigh the tremendous benefit to the Debtor's creditors that will be achieved by the sale of the Property. Because there are no genuine issues of material fact, the Trustee is entitled to judgment as a matter of law. This Court should grant summary judgment to the Trustee on Count Three of the Complaint.

## Conclusion

The Trustee has demonstrated, through examination of the testimony of the Debtor and the Defendant, as well as the presentation of documents, that there are no genuine issues of fact as to the circumstances under which the Transfer occurred. The badges of fraud sufficient to find a fraudulent transfer have been conclusively presented. The Court should grant summary judgment on Count One and Count Two and reverse the Transfer, returning the Property to the joint ownership of the Debtor and the Defendant.

The Trustee has similarly demonstrated that all of the elements of 11 U.S.C. § 363(h) have been met and, thus, summary judgment is also appropriate on Count Three granting the Trustee authorization to sell the Defendant's interest in the Property.

**STERNS & WEINROTH,**
**A Professional Corporation**
Attorneys for Plaintiff, Andrea Dobin, Chapter 7
Trustee for Rachel Prendeville

Dated: April 3, 2009         By:     /s/ Douglas J. McDonough
                                     Douglas J. McDonough